UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE                                      )
                                           )     Case No. 07-10531
AUGUSTA TISSUE MILL, LLC                   )     Chapter 11
                                           )
          Debtor.                          )

## ORDER AND OPINION
## DENYING MOTION FOR RELIEF FROM STAY

This matter came on for hearing August 14, 2007, on the Motion for Relief from the Automatic Stay ("Motion") filed by RCA Capitol Corp. ("RCA"). Jennifer Adams and Rayford K. Adams III appeared on behalf of RCA, Gregory D. Ellis appeared on behalf of Augusta Tissue Mill, LLC ("Debtor), and Lisa P. Sumner appeared on behalf of the Official Committee of Unsecured Creditors ("Committee").

RCA seeks relief from the automatic stay with respect to Two (2) Over Meccanica Deinking Cells ("Collateral") or, in the alternative, adequate protection payments. The Debtor and the Committee both object to the requested relief on the basis that RCA does not hold a valid, properly perfected security interest in the Collateral. Both the Debtor and the Committee argue that because RCA's UCC financing statement filed in Georgia does not list Debtor's correct legal name, it is seriously misleading and is therefore ineffective pursuant to §§ 11-9-502, 503, & 506 of the Official Code of Georgia Annotated. For the reasons that follow RCA's Motion for Relief from Stay will be denied without prejudice to parties litigating the issues pertaining to perfection in an adversary proceeding.

## FACTS

For purposes of RCA's Motion, the following facts are uncontroverted. On November

15, 2005, RCA entered into an agreement to lend money to Laurel Hill Paper Co. ("Laurel Hill") for the purchase of the Collateral. To perfect its security interest in the Collateral, RCA filed a UCC financing statement on November 14, 2005 with the North Carolina Secretary of State ("NC Financing Statement"). No issue has been raised regarding the effectiveness of the NC Financing Statement. Around January 25, 2006, the Collateral was delivered to 3452 Cookie Road, Augusta, GA, 30906, the business location of the Debtor. On May 28, 2006, Laurel Hill and the Debtor entered into an Equipment Lease that listed the lessor as "Laurel Hill Paper Co." and the lessee as "Augusta Tissue Mills, LLC." Laurel Hill and the Debtor also entered into a Purchase Agreement to sell the Collateral to the Debtor at the end of the lease term for $1.00. On that same day, the Debtor, Laurel Hill, and RCA entered into an Assignment and Acknowledgment of Assignment regarding the Collateral, whereby Laurel Hill assigned all of its rights, title and interest in and to the Lease and Purchase Agreement to RCA.

As a result of these three agreements, Debtor became the "debtor," as defined by Article 9 of the UCC, and RCA was required to file a UCC financing statement in Georgia in order to remain perfected. On September 14, 2006, RCA filed a UCC financing statement with the Clerk of Superior Court of Georgia ("GA Financing Statement"). The GA Financing Statement listed the Debtor's name as "Augusta Tissue Mills, LLC." On February 13, 2007, Laurel Hill filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this district. On March 12, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Georgia. On April 13, 2007, this court entered an order changing the venue of the Debtor's case to this district, and the Debtor's case is now pending in this court.

2

## DISCUSSION

The Debtor and the Committee deny that RCA has a properly perfected security interest in the Collateral. Neither the Debtor nor the Committee disputes that RCA initially perfected a security interest in the Collateral by filing the NC Financing Statement during the time period when Laurel Hill was the "debtor," as defined by the UCC. However, both the Debtor and the Committee maintain that RCA thereafter failed to file an effective financing statement in Georgia, the consequences of which are that RCA's security interest is now unperfected and deemed never to have been perfected pursuant to § 25-9-316 (b) of the General Statutes of North Carolina.

Although the Collateral has never been located in North Carolina, North Carolina was the correct place for RCA to file a UCC financing statement to perfect its security interest. Under the Revised Article 9 of the UCC ("UCC"), which North Carolina has enacted, the "local law of the jurisdiction in which the debtor is located governs perfection . . ." E.g., N.C. GEN. STAT. § 25-9-301 (2005). The UCC provides that a "debtor" is "a person having an interest, other than a security interest or other lien, in the collateral, whether or not that person is an obligor." E.g., N.C. GEN. STAT § 25-9-102(28)(a) (2005). In the initial transaction involving the Collateral, Laurel Hill was the only person with an interest, other than a security interest or other lien, in the Collateral. Therefore, Laurel Hill was the "debtor" and the laws of debtor's location governed perfection of RCA's security interest. The UCC provides that in the case of an organization with only one place of business, the organization is located at its place of business. E.g., N.C. GEN. STAT § 25-9-307 (2005). Laurel Hill is a North Carolina corporation with its only place of business in North Carolina. Therefore, the laws of North Carolina governed perfection and RCA

3

had to file its UCC financing statement in North Carolina to perfect its security interest. RCA filed the NC Financing Statement on November 14, 2005, and the parties do not dispute that it was sufficient to perfect RCA's security interest in the Collateral. Thus, it appears that the issues that the Debtor and the Committee have with RCA's alleged security interest are related to the GA Financing Statement.

The apparent transfer of interests in the Collateral from Laurel Hill to the Debtor and RCA, effectuated by the Equipment Lease, the Purchase Agreement, and the Assignment and Acknowledgment of Assignment (collectively referred to as the "May 28 Agreements"), made it necessary for RCA to file a UCC financing statement in Georgia within one year of the transfer, i.e. May 28, 2007, to remain perfected.[1] N.C. GEN. STAT. § 25-9-316 (a)(3) & (b) (2005). This is true because the May 28 Agreements transferred Laurel Hill's interest in the Collateral to Debtor such that Debtor became a "debtor" under the UCC. On September 14, 2006, RCA filed the GA Financing Statement with the Clerk of Superior Court of Georgia. Unfortunately, the GA Financing Statement did not list the "name of the debtor indicated on the public record of the debtor's jurisdiction of organization" and, therefore, the GA Financing Statement did not sufficiently provide the name of the debtor. GA CODE ANN. § 11-9-503(a)(1) (2005). The Certificate of Organization for Debtor was issued by the Georgia Secretary of State; therefore, Georgia is the "debtor's jurisdiction of organization." Debtor's legal name is listed as "Augusta

---

[1] Both Laurel Hill and the Debtor filed for relief under Chapter 11 of the Bankruptcy Code before May 28, 2007. There is a question of whether the bankruptcy filings tolled the time limitations listed in § 25-316(a)(3) of the North Carolina General Statutes. Because the court is denying RCA's Motion on other grounds, this issue will not be addressed in this order. If the parties bring an adversary proceeding to fully litigate all matters pertaining to whether RCA is perfected, the tolling issue may be addressed then.

Tissue Mill, LLC" on the Debtor's Certificate of Organization. The GA Financing Statement listed Debtor's name as "Augusta Tissue Mill<u>s</u>, LLC" (emphasis added). Because the GA Financing Statement did not provide the Debtor's correct legal name, the financing statement would appear to be insufficient, and therefore ineffective, unless the UCC provides for an exception.

The UCC provides that a UCC financing statement with "minor errors or omissions" is still effective, "unless the errors or omissions make the financing statement seriously misleading." GA CODE ANN. § 11-9-506 (a) (2005). Although the addition of an "s" on the end of Augusta Tissue Mill, LLC would appear to be a minor error,[2] a financing statement that fails to sufficiently provide the debtor's name is seriously misleading unless "a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose [the] financing statement." GA CODE ANN. § 11-9-506(b) & (c) (2005). The "filing office" in this proceeding is the "office of the clerk of the superior court in any county of [Georgia]." GA CODE ANN. § 11-9-501 (a)(2) (2005). Although the filing office in Georgia is any office of the clerk of the superior court, the Georgia Superior Court Clerks' Cooperative Authority ("Authority") administers, maintains, and modifies Georgia's UCC central indexing system. GA CODE ANN. § 11-59-519 (b)(1) (2005).[3] Because the Authority is the entity that

---

[2] Neither the Debtor nor the Committee argued that the addition of an "s" to Debtor's name constituted more than a minor error.

[3] When a record is filed in the filing office, the filing office must assign the record a unique number, maintain the filed record for public inspection, and transmit each record to the Authority within 24 hours of the filing. GA CODE ANN. § 11-9-519 (a) (2005). The Authority must include the record in the central filing system within 24 hours of the receipt from the filing office. GA CODE ANN. § 11-9-519 (b)(1) (2005). The Authority indexes financing statements according to the name of the debtor. GA CODE ANN. § 11-9-519 (c)(1) (2005).

maintains the UCC records and makes those records accessible to the public, it is the Authority's "standard search logic" that is at issue in this case. Therefore, the issue that must be resolved in order to determine whether RCA has a perfected security interest in the Collateral is whether the Authority's "standard search logic" discloses the GA Financing Statement when the Debtor's legal name, "Augusta Tissue Mill, LLC," is the search term.

Georgia has not yet enacted any UCC Administrative Procedures, but it has enacted a Revised Article 9 UCC Filing Guide ("Filing Guide"). See, Superior Court Clerks of Georgia and Georgia Superior Court Clerks' Cooperative Authority, State of Georgia Revised Article 9 UCC Filing Guide (2001), http://www.gsccca.org/filesandforms/files/ucc/filingguide.pdf. Unfortunately, the Filing Guide does not describe or identify what constitutes the "standard search logic" of the Authority. See id. As a result, the only evidence of the Authority's "standard search logic" that is before the court are the results of three different searches of the Authority's UCC Central Indexing System. The first and second search results were obtained online on the Authority's website, www.gsccca.org. There are two ways to search the UCC Central Indexing System online by a debtor's name, one is an exact name search and the other is a stem search. When the Debtor's legal name is plugged into the exact name search, the GA Financing Statement is not disclosed. When the Debtor's legal name is plugged into the stem search, the GA Financing Statement is disclosed. Therefore, if the online stem search represents the Authority's "standard search logic," then RCA has a perfected security interest. However, without more evidence, it is unclear whether the stem search constitutes the Authority's "standard search logic." The Revised Article 9 provides that:

A security interest that is enforceable immediately before July 1, 2001, and would have

priority over the rights of a person that becomes a lien creditor at that time is a perfected security interest under this article if, on July 1, 2001, the applicable requirements for enforceability and perfection under this article are satisfied without further action.

GA CODE ANN. § 11-9-703 (a) (2005). Therefore, parties had to be able to search the UCC Central Indexing System in different ways in order to find financing statements that were effective under the prior law, but would not be effective if they were filed after July 1, 2001 and were governed by the Revised Article 9. For example, in Kansas the stem search was implemented as a "more flexible search logic so as to identify UCC filings under the old law, which employed different name requirements." Pankratz Implement Co. v. Citizens Nat'l Bank, 130 P.3d 57, 63 (Kan. 2006). Because the court cannot tell from the Filing Guide nor the Authority website what the purpose of the stem search is, the court cannot conclude that the stem search represents the Authority's "standard search logic."

The other search result before the court contains the financing statements revealed in the Certified Search Report that was requested for the name Augusta Tissue Mill, LLC.[4] The Committee argues that the Certified Search Report is the best evidence of the Authority's "standard search logic" because it reports the results of a search that is conducted by the Authority. The Committee argues that the report does not disclose the GA Financing Statement. Unfortunately, the results of the Certified Search Report are not clear. The GA Financing Statement is not disclosed in the body of the Certified Search Report. However, the report

---

[4] A Certified Search Report is a search that is conducted by the Authority and it lists all currently effective original financing statements, any subsequent UCC Amendment filings related to the original, and any Transitional Filings that were filed on or after January 1, 1995, which name the requested debtor and are on file in the Authority's UCC Central Indexing System.

contains an attachment that does disclose the GA Financing Statement.[5] The attachment contains the following language: "The search information under the above name also revealed the following filings for debtors with the same or similar names. This additional information is not part of the attached certified search report, and therefore is not certified by the [Authority]." Therefore, it is unclear what the Authority's "standard search logic" is from a reading of the Certified Search Report because the report does not make it clear whether the financing statements disclosed in the attachment are a result of a search that utilizes the Authority's "standard search logic."

Because the court cannot determine what constitutes the "standard search logic" of the Authority, the court cannot determine whether a search of the Authority's records under the debtor's correct name, using the Authority's "standard search logic", if any, would disclose the GA Financing Statement. Therefore, the court is unable to determine whether RCA holds a perfected security interest in the Collateral. As a result, RCA's Motion for Relief from the Automatic Stay will be denied. Such denial, however, is without prejudice to the parties litigating on the merits the issues relating to the validity of RCA's security interest in an adversary proceeding as called for by Rule 7001 of the Federal Rules of Bankruptcy Procedure, rather than in the summary proceeding involved with a motion for relief from the automatic stay. See Grella v. Salem Five Cent. Sav. Bank, 42 F.3d 26, 32 (1st Cir. 1994) (stating that the "summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits"); Estate Constr. Co. v. Miller & Smith Holding Co., Inc., 14

---

[5]The attachment to the Certified Search Report identifies the debtor's name as "Augusta Tissue Mills, LLC" and discloses the file number of the GA Financing Statement, 007-2006-016546.

8

F.3d 213, 219 (4th Cir. 1994) ("Hearings to determine whether the stay should be lifted are meant to be summary in character.").

IT IS SO ORDERED.

This 5th day of September, 2007.

                                                WILLIAM L. STOCKS
                                                United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

| | | |
|---|---|---|
| Michael D. West, Esquire<br>Bankruptcy Administrator<br>P O Box 1828<br>Greensboro NC 27402-1828 | Carrie Ann Rohrscheib, Esq.<br>Haloe Dewey & Knight<br>88 Union Avenue, Ste 700<br>Memphis, TN 38103 | William P. Miller, Esq.<br>Roberson Haworth & Reese<br>P O Box 1550<br>High Point, NC 27261 |
| John D. Burns, Esq.<br>Hunton & Williams<br>421 Fayetteville Street,<br>Ste 1400<br>Raleigh, NC 27601 | Thomas E. Coughlin, Esq.<br>Jaffe Raitt et al<br>27777 Franklin Road,<br>Ste 2500<br>Southfield, MI 48034-8214 | Dirk K. Siegmund, Esq.<br>James K. Talcott, Esq.<br>Ivey McClellan et al<br>P O Box 3324<br>Greensboro, NC 27402-3324 |
| Holmes P. Harden, Esq.<br>Maupin Taylor<br>P O Drawer 19764<br>Raleigh, NC 27619 | Manfred W. Leong<br>Anderson Bauman et al<br>P O Box 2338<br>Greensboro, NC 27402 | Gene B. Tarr, Esq.<br>Blanco Tackabery et al<br>P O Drawer 25008<br>Winston-Salem, NC 27114 |
| Jason A. Knight, Esq.<br>Jones Free & Knight<br>P O Box 10097<br>Greensboro, NC 27403 | J. William Porter, Esq.<br>Parker Poe at al<br>401 S. Tryon Street, Ste 3000<br>Charlotte, NC 28202 | Stephan R.Futrell, Esq.<br>Kitchin Neal Webb et al<br>P O Box 1657<br>Rockingham, NC 28380 |
| Martha R. Sacrinty, Esq.<br>Hill Evans et al<br>P O Box 989<br>Greensboro, NC 27402 | Kiah T. Ford IV, Esq.<br>Parker Poe et al<br>401 S. Tryon Street, Ste 3000<br>Charlotte, NC 28202 | William P. Janview, Esq.<br>Everett Gaskins et al<br>P O Box 911<br>Raleigh, NC 27602-0911 |
| Benjamin A. Kahn, Esq.<br>Nexsen Pruet et al<br>P O Box 3463<br>Greensboro, NC 27402 | Benjamin Blaustein, Esq.<br>Kelley Drye & Warren<br>101 Park Avenue<br>New York, NY 10178 | Robert E. Price, Jr., Esq.<br>Price Law Office<br>1144 West Fourth Street<br>Winston-Salem, NC 27101 |
| James R. Vann, Esq.<br>Vann & Sheridan<br>P O Box 2445<br>Raleigh, NC 27602-2445 | Joe M. Lozano, Jr., Esq.<br>Brice, Vander Linden et al<br>9441 LBJ Freeway, Ste 350<br>Dallas, TX 75243 | Margaret C. Lumsden, Esq.<br>Unti & Lumsden<br>302 Jefferson Street, Ste 200<br>Raleigh, NC 27605 |
| David H. Conaway, Esq.<br>David A. Matthews, Esq.<br>Shumaker Loop & Kendrick<br>128 S. Tryon Street, Ste 1800<br>Charlotte, NC 28202 | Brian P. Hall, Esq.<br>Smith Gambrett & Russell<br>1230 Peachtree St, N.E., Ste 3100<br>Atlanta, GA 30309-3592 | Marc L. Hamroff, Esq.<br>Stephen E. Turman, Esq.<br>Moritt Hock et al<br>400 Garden City Plaza<br>Garden City, NY 11530 |

Joseph D. Roach, Esq.
Rider Bennett
33 South Sixth Street, Ste 4900
Minneapolis, MI 55402

David M. Warren, Esq.
Poyner & Spruill
P O Box 353
Rocky Mount, NC 27802

Daniel C. Bruton, Esq.
Bell Davis & Pitt
P O Box 21029
Winston-Salem, NC 27120

Kenneth G. Kubes, Esq.
Arlene N. Gelman, Esq.
Reed Smith
10 South Wacker Drive
Chicago, IL 60606

American Express Bank FSB
c/o Becket & Lee
P O Box 3001
Malvern, PA 19355-0701

Kenneth M. Greene, Esq.
Carruthers & Roth
P O Box 540
Greensboro, NC 27402

Rayford K. Adams, Esq.
P.O. Box 20570
Greensboro, NC 27420